### BLAKENEY v. FAY. (No. 7846.)

Court of Civil Appeals of Texas. San Antonio. Dec. 23, 1927.

Rehearing Denied Feb. 8, 1928.

1. **Brokers ⬤➡86(4)—Finding that broker was procuring cause of sale held unsupported by evidence showing termination of negotiations instituted by broker and sale to third party.**

In suit by broker on contract for commissions alleged to have been earned in sale of corporate stock, finding that broker was procuring cause of ultimate sale of defendant's stock *held* unsupported and contrary to evidence showing that negotiations instituted by broker terminated with defendant's withdrawal of offer to sell, of which broker was notified, that defendant subsequently refused to deal with customer procured by broker, and that customer was not party to final sale of stock made to another, though customer finally procured some of stock through third person.

2. **Brokers ⬤➡86(1)—Finding that defendant resorted to subterfuge to deprive broker of commission in sale of stock held unsupported by evidence.**

In suit by broker on contract for commissions alleged to have been earned in sale of corporate stock, finding that defendant resorted to subterfuge to defraud broker of commission by selling stock to third party from whom customer procured by broker purchased stock *held* unsupported by evidence showing defendant terminated negotiations for sale of stock to broker's customer to knowledge of broker and thereafter refused to deal with broker's customer.

3. **Brokers ⬤➡52—Broker's right to commissions for sale to named person terminated on termination of negotiations for sale unless sale was thereafter effected through broker's efforts.**

In action by broker for commissions in sale of stock under contract contemplating sale to named person when negotiations for sale to such person were definitely terminated and broker so notified, broker's right to commissions terminat-

ed unless sale was thereafter effectuated as result of broker's original or subsequent efforts.

**4. Brokers ☞52—Broker held not entitled to commissions for sale, under evidence showing negotiations with customer procured terminated and sale to third party.**

In action by broker for commissions in sale of stock under contract contemplating sale to named person, broker was not entitled to commissions under evidence showing that negotiations between defendant and customer procured by broker were definitely terminated, that defendant sold stock to third party after refusing to deal with broker's customer, and that broker had nothing to do with final sale, though broker's customer subsequently purchased part of stock through third person.

Appeal from District Court, Dallas County; Claude M. McCallum, Judge.

Action by Frank Fay against M. M. Blakeney. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

Muse & Muse, of Dallas, for appellee.

SMITH, J. The suit is for the recovery upon a contract for broker's commission alleged to have been earned in the sale of corporate stock. The appeal is from a judgment in favor of the broker for such commission.

M. M. Blakeney owned a majority of the capital stock of the S. G. Davis Hat Company, a corporation domiciled in the city of Dallas. J. Oscar Davis had had experience in the wholesale hat business, and he desired to re-enter the business through the purchase of Blakeney's stock. He communicated his desire to Frank Fay, a broker, and suggested to the latter that he get in touch with Blakeney for the purpose of procuring his interest in the hat company. Fay acted upon Davis' suggestion, interviewed Blakeney, and finally brought Blakeney and Davis together for negotiations, with the understanding that the former, in event of a sale to Davis, would pay him a 2 per cent. commission. Fay, having brought the parties together, dropped out of the negotiations upon Blakeney's suggestion that the latter would handle the matter with Davis to a conclusion. The two principals continued the negotiations for some weeks, but made no progress towards agreement, being wide apart in their respective propositions. In fact, Blakeney lost patience with Davis' attitude in the matter, sharply concluding the negotiations in January, 1925, and refusing to resume them then and at all times thereafter. He never sold his stock to Davis, but nearly a year later did sell to others, who in turn sold part of their stock to Davis, who became president of the reorganized corporation.

Fay, the broker, had no connection with or knowledge of the sale until after it was consummated. His activities in the matter ceased when he brought Blakeney and Oscar Davis together, and when they failed to agree Fay was advised of the result of the negotiations, that Blakeney's offer had been withdrawn, that the deal was off, and his relation as broker to Blakeney thereupon ceased and was never revived, unless by implication through the negotiations which resulted in the sale of the stock to the ultimate purchasers. The facts must be considered in tedious detail in reaching a conclusion upon the whole case.

The transactions involved consisted of two sets of negotiations. The first was initiated by Oscar Davis, who desired to re-enter the hat business by securing Blakeney's stock in the Davis Hat Company. In furtherance of this desire he asked his business associate, Fay, to get in touch with Blakeney and ascertain if the latter would sell and, if so, at what price. In pursuance of this request, Fay saw Blakeney and disclosed his object, but declined to disclose the name of his "prospect." After several conversations and some correspondence, Blakeney refused to continue the negotiations except directly with the prospective purchaser, whose name he demanded as a condition for further negotiations, whereupon Fay named Davis. Blakeney then agreed to pay Fay a commission of 2 per cent. in event of a sale to Davis, with the understanding that Blakeney would conduct the negotiations without aid from Fay. These negotiations terminated in failure, Blakeney's offer to sell was withdrawn, the deal was declared off, and Fay was so informed. Fay did not thereafter interest himself in the matter, and, while Davis still had a desire to purchase Blakeney's stock, he abandoned all hope or expectation of doing so through his own efforts or the intervention of Fay.

Several months later S. G. Davis, former associate of Blakeney in the Davis Hat Company, appeared on the scene, after a long absence from Dallas, and, without knowledge of the previous negotiations, proposed to Oscar Davis that the two go in together in the establishment of a new hat business in Dallas. Oscar Davis declined to enter upon a new venture; he took the position that the only way he would consider entering the business was by buying out Blakeney, and that that was out of the question, because Blakeney was "too high" and he could not trade with him. Whereupon S. G. Davis declared he could bring Blakeney to terms, even though Oscar Davis had failed to do so. Although still skeptical, Oscar Davis acquiesced, and S. G. Davis proceeded with his plan.

It was at this juncture and as a result of

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

this chance incident that S. G. Davis entered the situation. In pursuance of his boast to Oscar Davis, he called on Blakeney and proposed to buy the latter's stock. Blakeney said he had at one time (when negotiating with Oscar Davis) thought of selling, but was no longer in the notion. But Davis then told Blakeney that he (Davis) had arranged to open a business in competition with Blakeney, had in fact obtained an option upon a location and was in readiness to begin the competitive venture. This statement was wholly false, but as the two men were old friends and theretofore for a period of 14 years had been associated together as officials in the Davis Hat Company, Blakeney was impressed by it and, desiring to avoid the hazard of competition with Davis, told the latter that under that threat he would consider selling out to Davis. Several conferences between the two friends followed. In one of these conferences S. G. Davis told Blakeney that Oscar Davis was interested in the proposed purchase, whereupon Blakeney told his adversary that he would have no dealings with Oscar Davis, whom he had found wholly unreasonable in previous dealings, and would proceed no further in the negotiations if Oscar Davis was to be connected with the purchase, whereupon Davis told him that E. W. Morten was to furnish all the proposed purchase price and take all the stock. With this understanding Blakeney proceeded with the negotiations. It was agreed that he would meet S. G. Davis and Morten in a conference. When this conference was held, Oscar Davis joined S. G. Davis and Morten in their negotiations, without objection from Blakeney. The parties upon this occasion agreed upon the price to be paid Blakeney for his stock, it being fully and definitely understood by all that Morten was to purchase and pay for all the stock, and the contract, reduced to writing, was executed by Blakeney upon the one hand, and Morten and S. G. Davis upon the other. Oscar Davis signed the contract as a witness only. He was not a party to the contract for any purpose, purchased none of the stock from Blakeney, and, although he afterwards acquired some of the stock from Morten, there is no evidence that Blakeney knew he intended to do so, notwithstanding he was aware that Oscar Davis had interested himself in the final negotiations and would probably become interested with the new corporate régime. Moreover, Blakeney had refused to negotiate with Oscar Davis, or to proceed with the sale if Davis was to be one of the purchasers.

[1, 2] The jury found from this state of facts that Fay was the procuring cause of the sale made to Morten through S. G. Davis, and further found, in effect, that Oscar Davis was the real purchaser, and that the sale to Morten was a subterfuge resorted to by Blakeney to defraud Fay out of his commission. We have quite firmly concluded that the finding that Fay was the procuring cause of the ultimate sale of Blakeney's stock is wholly unsupported by any evidence, and is directly contrary to all the evidence. And while this conclusion controls the disposition of the appeal, regardless of whether Oscar Davis or Morten was the real purchaser, we are of the further opinion that the finding of the existence of a subterfuge was unsupported by, and was contrary to, the evidence.

[3] There is, and under the facts can be, no contention that the agreement between Blakeney and Fay comprehended any sale other than that contemplated to Oscar Davis, nor to him other than under the negotiations then set on foot by Fay under Davis' directions. And when those negotiations were abruptly and definitely terminated, Blakeney's offer withdrawn, the deal declared off, and Fay so notified, his right to earn a commission terminated, unless the principals had gotten back together and effectuated a sale as a result of Fay's original or subsequent efforts, which was not the case. He made no subsequent effort, and certainly nothing he had previously done had anything to do with the ultimate sale, even if it be conceded that such sale was in effect made to Davis.

[4] Davis' desire or purpose to acquire Blakeney's stock originated in his own mind without suggestion from Fay or any other person, and Fay's first knowledge of it was when Davis told him of it and directed him to communicate it to and get an offer from Blakeney. Fay did not "find" Davis as a prospective purchaser, did nothing towards enlisting Davis' interest in the purchase, for that interest already existed. His only activity was to procure for Davis an offer from Blakeney, and his only opportunity to earn the commission from Blakeney hung upon an acceptance by Davis of that offer, or Blakeney's acceptance of Davis' counter offer, or upon an agreement between the principals. These offers and negotiations were fruitless; nothing survived the negotiations but Davis' desire to purchase from Blakeney, which desire existed prior to Fay's entry into the transaction. These negotiations, initiated by Davis and put in active operation by Fay, wholly failed, and both Davis and Blakeney abandoned all hope of accomplishing a sale and purchase through the negotiations set in motion by Fay, who was promptly apprised of the result of those negotiations.

The conclusion we have reached is not disturbed by giving full effect, as we have done, to the fact that when appellee brought Oscar Davis and appellant together, the latter, with appellee's acquiescence, relieved appellee of further participation in the negotiations and himself assumed the burden of con-

ducting those negotiations to a conclusion. Appellant did conduct the negotiations until wide and irreconcilable differences between the principals rendered further efforts futile, resulting in the withdrawal of the proposition to sell and the termination of negotiations, with notice to appellee, who acquiesced in the situation and remained idle until through S. G. Davis' efforts the sale was made to Morten.

If it be conceded that Oscar Davis was the real purchaser, with appellant aware of that fact, appellee was nevertheless not entitled to a commission, for it conclusively appears that the sale was made through no act of his, directly or indirectly. Nothing he did caused Oscar Davis to become interested in purchasing appellant's stock, for Davis had that and nothing else in mind when upon his own motion he told appellee of his desire for the stock and sent appellee to appellant to open negotiations with the latter for Davis. All appellee did was to tell appellant of Davis' interest, when upon appellant's suggestion he retired from the transaction and left the negotiations to the principal. Of course, if those negotiations had resulted in a sale, appellee would have been entitled to a commission, not because he had interested the purchaser in the object to be sold, or because he had hunted for and found a purchaser, but because he had put the seller in touch with a self-appointed prospect, who himself had initiated the negotiations, and who all along had wanted to purchase the stock he knew appellant owned. He was apprised of the failure of these negotiations, and of their definite termination, and the withdrawal of appellant's offer to sell. He had done all he was required to do, it is true; he did all he could do, and made no further effort, then or thereafter.

He could not do anything that would interest Davis in the stock, for Davis was still interested, as he had been long before appellee was called in. Davis had abandoned all hope of procuring the stock through his own or appellee's efforts, and never thereafter thought of exerting those efforts. If he was interested in the final deal, or if he was in fact the final purchaser, as appellee contends, then he became so through the wholly unexpected intervention of S. G. Davis, whose peculiar relations to Blakeney were such as to enable him through a subterfuge to enlist Blakeney's interest and thereby negotiate the contract finally made. According to appellee's contention and to Oscar Davis' testimony, the latter's desire and hope to purchase Blakeney's stock remained the same throughout the entire period, from prior to the time appellee was called in until Davis finally procured some of the stock purchased by Morten from appellant, and that desire and intention were finally effectuated solely through the intervention of S. G. Davis and in no sense through the efforts of appellee or of the negotiations set on foot by him. He was utterly helpless at all times to do anything whatever towards effectuating the sale made, and he did nothing and could do nothing to that end. Therefore he did not earn a commission, and was entitled to recover none.

The liability of principals for broker's commissions has been extended by the courts in recent years to such an extent that claims and recoveries for such commissions have become almost a scandal in this state, and this court, for one, declines to extend that liability so far as to effectuate it in this case.

The judgment is reversed and the cause remanded for another trial.